UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JUDITH RÉ,<br><br>　　　　Plaintiff,<br><br>v.<br><br>JODI R.R. SMITH, AND<br>BARNES & NOBLE, INC.,<br><br>　　　　Defendants. | )<br>)<br>)<br>)<br>)　Civil Action No. 04-11385-RGS<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

### MEMORANDUM OF DEFENDANTS JODI R. R. SMITH AND BARNES & NOBLE, INC. IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

Defendants Jodi R. R. Smith ("Smith") and Barnes & Noble, Inc. ("B&N" and together with Smith, "Defendants") hereby submit this memorandum in support of their motion for summary judgment on all counts of the Complaint.

### INTRODUCTION

Plaintiff Judith Ré's ("Plaintiff") allegation that B&N's publication of two books -- The Girl's Guide to Social Savvy and The Guy's Guide to Social Savvy ("Girl's/Guy's Guides") -- violates Plaintiff's trademark, is wholly without merit. This suit arises out of Plaintiff's mistaken view as to her role in the creation of the widely used phrase "social savvy" and her ability to control its use, as well as her failure to appreciate the extent that "social savvy" is used by third parties as a synonym for some aspect of etiquette, social graces or similar behavior. Plaintiff erroneously believes that she coined the phrase "social savvy" notwithstanding the wide use of the phrase having nothing to do with Plaintiff both before and after she established her business. She also misunderstands the protections of trademark law, insisting that her trademark

registration for training programs and educational classes gives her an absolute monopoly on the use of "social savvy" and that every use of the phrase by others constitutes infringement.

Plaintiff authored a book 13 years ago that contained the phrase "social savvy" in its title. That book is currently out of print. Plaintiff currently uses the phrase "social savvy" in connection with certain aspects of seminars that she gives to small groups, primarily children, about etiquette in order to make them socially savvy. Plaintiff spends no money on advertising and promotion. Indeed, her seminar business generated gross revenues of less that $10,000 a year for the past three years. Notwithstanding Plaintiff's nominal use of the phrase "social savvy," she has embarked on a litigation against Smith and B&N, the author and publisher, respectively, of the Girl's/Guy's Guides.

Plaintiff's claims fail for four principal reasons. First, "social savvy" is a common phrase used by an overwhelming number of third parties to refer to etiquette, social graces or similar behavior in seminars and book titles, in the text of etiquette and other books, and in newspapers and magazines. Plaintiff herself uses the phrase "social savvy" in the media and in her book to describe some element or aspect of etiquette, social graces or similar behavior, rather than as a source indicating trademark. Since the phrase "social savvy" indicates the basic nature of the goods and services, the phrase is generic and incapable of being protected as a trademark. Second, even if "social savvy" were found to be descriptive, it would be an extremely weak designation without secondary meaning. Plaintiff has no direct evidence of secondary meaning, such as a survey, and the circumstantial evidence she proffers is insufficient as a matter of law. Third, Plaintiff cannot support a finding of likelihood of consumer confusion that must be shown to support an allegation of trademark infringement. Fourth, Defendants did not use the phrase "social savvy" as a trademark. When Defendants used the phrase as part of the title of the

Girl's/Guy's Guides, they used it in the same manner as do so many other parties -- to accurately indicate the subject matter of the books. Thus, Defendants' use is protected under the fair use doctrine as a matter of law.

## STATEMENT OF FACTS

Plaintiff is the owner of the Judith Ré Academie ("JRA"). Ré Dep. at 45.[1] The JRA provides etiquette courses and seminars, primarily to children and teenagers. Plaintiff operates the JRA out of her home and has no office. She has one part-time employee whom she pays $100 per seminar. Ré Dep. at 19-20.

Plaintiff began using the phrase "social savvy" in or about 1986. Ré Dep. at 130. She believes that she alone coined the phrase. Ré Dep. at 80. In 1991, Plaintiff, doing business as JRA, applied for and obtained a registration of "social savvy" in connection with providing "training programs and educational classes in teaching young people the social graces." Kahn Aff., Ex. F. The registration does not identify books. Id.

Since starting the JRA in 1986, Plaintiff has done very little to promote her business or the "Social Savvy" mark. Plaintiff does not spend any money on advertising in connection with her business, has never hired a public relations firm, and does not even have a website. Ré Dep. at 34-35. Plaintiff's business generated gross earnings of $4,655 in 2003, $9,300 in 2002 and $9,200 in 2001. Kahn Aff., Ex. G. Her gross expenses were $3,070 in 2003, $3,301 in 2002 and $3,251 in 2001. Id.

In 1991, Plaintiff authored a book titled Social Savvy: A Teenager's Guide to Feeling Confident in any Situation. Complaint ¶1; Kahn Aff., Ex. A. Her book did not achieve much success. She earned no royalties other than her advance payment of $35,000 because the book

---

[1] The deposition transcripts referenced in this Memorandum are authenticated by and attached Affidavit of Erik W. Kahn ("Kahn Aff.") submitted herewith.

3

sales did not exceed or "earn out" the advance. Ré Dep. at 63. It is currently out of print and Plaintiff has no specific agreement in place or date on which she expects to republish the book. Ré Dep. at 64-65.

In February 2003, a buyer for B&N approached Hallie Einhorn ("Einhorn"), an editor at B&N, about publishing etiquette guides for adult men and women. Einhorn Dep. at 37. The buyer noticed that certain etiquette books (though not Plaintiff's book) were selling well and thought it might be profitable for B&N to publish a pair of etiquette books, one geared to men and one to women. Einhorn Dep. at 37-39. The details of the book were left to Einhorn. The buyer's only requirement was that the titles not contain the word "etiquette," which she thought sounded "too stuffy." Einhorn Dep. at 39. After researching the etiquette book field, Einhorn generated titles that she felt were most appropriate for the young adult group targeted (20s and 30s) and the contemporary subject matter of the books -- The Girl's Guide to Social Savvy and The Guy's Guide to Social Savvy Einhorn Dep. at 41-42, 58-64.

In order to find an author for the etiquette guides, Einhorn conducted internet searches for an etiquette expert. Einhorn Dep. at 75-77. Defendant Smith has been an etiquette consultant since 1996 when she created Mannersmith, an etiquette consulting firm. Smith Dep. at 21-24. Her clients are primarily businesses, colleges and universities and professional organizations. Smith Dep. at 25. Smith provides etiquette training sessions and writes and speaks publicly about modern manners. In addition, Smith operates a website, www.Mannersmith.com, on which the general public may find information about etiquette. Smith Dep. at 27. Einhorn reviewed Smith's website, and contacted her. After some preliminary discussions Einhorn and Smith agreed that Smith would write the Girl's/Guy's Guides. Einhorn Dep. at 75-80; Smith Dep. at 58-60. By the time Einhorn contacted Smith, the titles of the books had already been

chosen by B&N. Einhorn Dep. at 77; Smith Dep. at 60. The Girl's/Guy's Guides were published in April 2004. Answer, ¶21; Kahn Aff., Ex. B

## ARGUMENT

### Summary Judgment Standard

Summary judgment is proper when the pleadings and evidence on file show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The burden is on the non-movant to direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. Celotex v. Catrett, 477 U.S. 317, 324 (1986). Evidence sufficient to establish a genuine issue of material fact must be more than vague averments of expected or hoped-for proofs. See Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990). "On issues where the non-movant bears the ultimate burden of proof, he must present definite, competent evidence to rebut the motion." Mesnick v. General Electric Co., 950 F.2d 816, 822 (1st Cir. 1991).

### Trademark Infringement Analysis

The First Circuit has distilled the trademark infringement inquiry into a two step determination. First, the plaintiff must establish that it has a protectable right in its mark. Boston Beer Co. Ltd. P'ship v. Slesar Bros. Brewing Co., Inc., 9 F.3d 175, 180 (1st Cir. 1993). If the plaintiff makes such a showing, the court must then determine whether there is a likelihood of confusion between the protectable mark and the challenged usage. Id. Even if a likelihood of confusion is found, a plaintiff's infringement claim will fail under the "fair use" doctrine set forth in 15 U.S.C. § 1115(b)(4) if the defendant's use of the term is descriptive of and used fairly to describe the goods or services of the defendant.

## POINT I
## PLAINTIFF DOES NOT HAVE A PROTECTABLE
## RIGHT IN THE COMMON WORDS "SOCIAL SAVVY"

A.    Plaintiff's Registration Cannot Prevent
A Finding That The Mark Is Unprotectable

Plaintiff makes much of her ownership of a federal trademark registration. However, Plaintiff's ownership of a registration is unpersuasive in this case for two reasons: First, the registration does not apply to books -- indeed, the law specifically prohibits the registration of single book titles. Therefore, the services covered by the registration are not the goods offered by Defendants. Second, ownership of a registration, even one that has become incontestable, does not prevent a finding that a mark is invalid because it is generic or that the mark, as applied to goods or services outside of the registration, is descriptive and unprotectable without proof of secondary meaning.

Single titles of literary works are not registerable. Sugar Busters LLC v. Brennan, 177 F.3d 258, 269 (5th Cir. 1999) ("[t]he Trademark Trial and Appeal Board has consistently interpreted Cooper as prohibiting the registration of single book titles as trademarks."); In re Posthuma, 1998 WL 132923, 45 U.S.P.Q.2d 2011 (T.T.A.B. 1998) (denying registration of mark, which was the title of a single creative work). Because a title is merely descriptive of the contents of the book, it "cannot create, as a matter of law, an association between the book's title (the alleged mark) and the source of the book (the publisher)." Herbko International, Inc. v. Kappa Books, Inc., 308 F.3d 1156, 1163 (Fed. Cir. 2002).

The fact that Plaintiff has registered the mark "Social Savvy" merely creates a *rebuttable* presumption of validity for the services recited. Keebler Co. v. Rovira Biscuit Corp., 624 F.2d 366, 374 (1st Cir. 1980); Bay State Savings Bank v. Baystate Financial Services, LLC, No. Civ.A. 03-40273-NMG, 2004 WL 2181600 at *5, (D. Mass. June 25, 2004). This presumption

6

of validity attaches only to plaintiff's use of the mark "in connection with the goods or service specified in the certificate" (15 U.S.C. § 1057(b)) -- namely "training programs and educational classes in teaching young people the social graces." Kahn Aff., Ex. F. Mushroom Makers, Inc. v. R.G. Barry Corp., 580 F.2d 44, 48 (2d Cir. 1978) ("even if a mark is registered, the presumption of an exclusive right to use it extends only so far as the goods or services noted in the registration certificate"). Book sales are not listed in the registration certificate nor could they be. Even if the registration covered the goods at issue, a defendant can nevertheless demonstrate that the plaintiff's mark is either generic or descriptive without secondary meaning. Bay State Savings Bank, 2004 WL 2181600 at *5.

Whether or not the registration has been in existence for over five years and has been made "incontestable" due to a filing under Section 15 is irrelevant to this analysis. Incontestability, under Section 15 of the Lanham Act, 15 U.S.C. §1065, provides certain limited advantages to a registrant, such as a defense against claims that the mark is descriptive for the goods or services recited in the registration. However, Section 15 § 1065 specifically provides that "no incontestable right shall be acquired in a mark which is the generic name for the goods or services or a portion thereof, for which it is registered." Moreover, incontestability extends only to the goods and services recited in the registration, and could not extend to books in this case. See Section 15 § 1115(b); Sunmark, Inc., v. Ocean Spray Cranberries, Inc., 64 F.3d 1055, 1058 (7th Cir. 1995) ("that Swee TARTS is an incontestable mark for sugar candy does not make [plaintiff] the gatekeeper of the words for the whole food industry."). Thus, Plaintiff's registration does not protect the phrase from attack on the basis that it is generic, or alternatively, as applied to books that "social savvy" is descriptive without proof of secondary meaning.

B.  The Words "Social Savvy" Are Generic

A term is classified as "generic" when it "refer[s] to a genus of which a particular product is a species, without distinguishing its source or origin." S.S. Kresge Co. v. United Factory Outlet, Inc., 598 F. 2d 694, 696 (1st Cir. 1979). Trademark law does not protect generic marks. Boston Beer, 9 F.3d at 180 ("generic terms... can never be protected"); S.S. Kresge Co. v. United Factory Outlet, Inc., 634 F.2d 1, 3 (1st Cir. 1980) ("No amount of purported proof that a generic term has acquired a secondary meaning associating it with a particular producer can transform that term into a registrable trademark").

To allow a generic term to be protected under trademark law would have the effect of depriving any "'competing manufacturers of the product of the right to call an article by its name.'" Miller Brewing Co. v. Falstaff Brewing Corp., 655 F.2d 5, 8 (1st Cir. 1981), quoting Abercrombie & Fitch Co. v. Hunting World, Inc., 537 F.2d 4, 9 (2d Cir. 1976).

Courts frequently grant summary judgment for defendants in trademark cases on the ground that the plaintiff's mark was generic. See, e.g., S.S. Kresge Co. v. United Factory Outlet, Inc. et al., 634 F.2d 1 (1st Cir. 1980) (affirming district court's grant of summary judgment on the ground that the term was generic).

Here, Plaintiff has adopted the compound phrase "Social Savvy," which immediately conveys to consumers the basic nature of the goods and services that Plaintiff offers, namely instructions on how to be socially savvy. No imagination is needed for the public to conclude that the phrase "social savvy" refers to etiquette, social graces or similar behavior, and as such, it is incapable of functioning as an indicator of source or origin. For example, in Leathersmith of London, Ltd. v. Alleyn, 695 F.2d 27, 30-31 (1st Cir. 1982), the First Circuit found that the term "leathersmith" can "easily be" a generic description of the craft of working with leather. Id. at 30. The Court based its decision on the fact that "Leathersmith" was merely the combination of

8

two ordinary words, no different from "jokesmith", "songsmith", "wordsmith", or "tunesmith." The same is true of "social savvy," which is no different from "financial savvy", "courtroom savvy", "travel savvy", "political savvy", "tech savvy", and countless other word combinations with "savvy" which function in the same way and simply act as a generic description, incapable of indicating source. Accordingly, "as a matter of public policy, others should be equally entitled to use such nondistinctive words." American Heritage Life Ins. Co. v. Heritage Life Ins. Co., 494 F.2d 3, 11 (5th Cir. 1974).

That a phrase is generic can be even further established by extensive third party use of a phrase. Mil-Mar Shoe Co., Inc. v. Shonac Corp., 75 F.3d 1153, 1159 (7th Cir. 1996) (finding genericness in term "warehouse shoes" since "[s]ignificant use of a term by competitors in the industry has traditionally been recognized…"), Best Buy Warehouse v. Best Buy Co., Inc., 751 F. Supp. 824, 826 (W.D. Mo. 1989) ("best buy" is generic because, among other things, "hundreds of businesses across the United States use the term 'best buy' in the names of their businesses"), aff'd, 920 F.2d 536 (8th Cir. 1990).[2] Such general usage of a term can be evidenced through use in newspapers and other publications, generic use by competitors and people in the same field as the plaintiff, and a plaintiff's own generic use of the phrase. Nartron Corp. v. STMicroelectronics, Inc., 305 F.3d 397, 406 (6th Cir. 2002), cert. denied, 538 U.S. 907 (2003).

The third-party generic use of "Social Savvy" is overwhelming. Defendants have offered just some of the examples of such third-party use, including:

---

[2] These cases also show that the mere use of an adjective or modifier in a compound term does not make a common term "descriptive" as opposed to "generic". Many generic "marks" contain adjectives or modifiers. See, e.g., Security Ctr., Ltd. v. First Nat'l Security Ctrs., 750 F.2d 1295, 1299 (5th Cir. 1985) ("security" in "Security Centers"); American Heritage, 494 F.2d at 11 ("heritage" in "Heritage Life Insurance"); National Conf. of Bar Exam'rs v. Multistate Legal Studies Inc., 692 F.2d 478, 487-88 (7th Cir. 1982) ("multistate" in "multistate bar examination"); Blinded Veterans Ass'n v. Blinded American Veterans Found., 872 F.2d 1035, 1041 (D.C. Cir. 1989) ("blinded veterans" generic).

- 14 examples of use of the phrase "social savvy" by third parties including etiquette/advice columnists prior to Plaintiff's claimed date of first use (Affidavit of Todd Braverman ("Braverman Aff.") at 7-8[3] and Ex. 4);

- 35 examples of third party etiquette consultants using the designation "social savvy," including in seminar titles such as "Social Savvy Camp for Kids", "Social Savvy for Singles" and "Social Savvy for Kids" (Braverman Aff. at 9-13 and Ex. 5);

- 81 examples of third party authors using the phrase "social savvy" in the title of books and within the body of books (Braverman Aff. at 14-21 and Ex. 6);

- 24 examples of third party web sites using the designation "social savvy" to designate classes or courses in etiquette, social graces or similar behavior (Braverman Aff. at 22-23 and Ex. 7);

- 115 examples of third parties using the designation "social savvy" in newspaper and magazine articles as a synonym for etiquette, social graces or similar behavior (Braverman Aff. at 24-38 and Ex. 8).

Moreover, Plaintiff herself has frequently used the phrase generically both in her book and in interviews with the media. See Braverman Aff. at 3-6 and Exs. 2 and 3. For example, Plaintiff writes in her book that "[Manners] are, in fact, your ticket to acquiring that thing called social savvy" (p. 8); "Undoubtedly you move about your world with plenty of social savvy" (p. 11); "Face-to-face conversations are not the only ones that require social savvy" (p. 44); "First of all, recognize that your friend's social savvy is in a state of disrepair." (p. 95). Braverman Aff. at 3-4 and Ex. 2.

In light of the extensive generic uses of the phrase "social savvy" by Plaintiff, by third parties in the same field as Plaintiff and in countless newspaper and magazine articles and books, and the fact that the words "social savvy" communicate the basic nature of the services, this Court should rule, as a matter of law, that Plaintiff's "mark" is generic and incapable of trademark protection.

---

[3] The cites to the Braverman Aff. are to the page numbers of that affidavit.

10

C.   Even If The Term "Social Savvy" Were Descriptive It Would Be An <u>Extremely Weak Designation Without Legally-Sufficient Secondary Meaning</u>

As discussed, Plaintiff's trademark registration does not extend to books. In order for a holder of a book title to receive protection under §43(a) of the Lanham Act, the holder must demonstrate, in the first instance, that the title has acquired secondary meaning. Sugar Busters, 177 F.3d at 269; Twin Peaks Productions, Inc. v. Publications International, Ltd., 996 F.2d 1366, 1379 (2d Cir. 1993). Thus, even if the Court were to find the phrase "Social Savvy" to be descriptive,[4] as opposed to generic, it would still have only a narrow scope of protection if, and only if, Plaintiff were able to show that the title of her book had acquired secondary meaning.

Secondary meaning refers to a word's or phrase's "ability to tell the public that the word [or phrase] serves a special trademark function, namely, that it denotes a product or service that comes from a particular source." Boston Beer, 9 F.3d at 181. A word or phrase has achieved secondary meaning when "a significant quantity of the consuming public understand a name as referring exclusively to the appropriate party." Flynn v. A K Peters, Ltd., 377 F.3d 13, 19 (1st Cir. 2004).

Plaintiff's burden of establishing that the book title/phrase she is seeking to protect has acquired secondary meaning is a heavy one since "proof of secondary meaning entails vigorous evidentiary requirements." Boston Beer, 9 F.3d at 181; Yankee Candle Co., Inc. v. Bridgewater Candle Co., LLC, 259 F.3d 25, 43 (1st Cir. 2001); Labrador, 32 F. Supp. 2d at 34. Accordingly, Plaintiff must show that a "substantial portion of the consuming public associates the [book

---

[4]   Plaintiff changes the categorization of her "mark" throughout her complaint, claiming that it is "distinctive and suggestive" (Complaint ¶9), "inherently distinctive" (Complaint ¶18), and even saying that it has "taken on secondary meaning" (Complaint ¶18). Any claim that the mark is anything other than generic, or at best, descriptive, is clearly erroneous. The Courts have made clear that "suggestive" marks "connote rather than describe a particular product or service and require the consumer's imagination to reach a conclusion as to the nature of the product or service." Labrador Software Inc. v. Lycos, Inc., 32 F. Supp. 2d 31, 33 (D. Mass. 1999). "Social Savvy" is clearly not suggestive, as it takes no imagination to understand that it refers to social etiquette.

11

title/phrase] specifically with [Plaintiff's] business." Flynn, 377 F.3d at 20; citing, Boston Beer, 9 F.3d at 182.

Since establishing that a substantial portion of the consuming public associates a book title or particular words with a plaintiff is such a difficult standard for a plaintiff to meet, courts frequently grant summary judgment in a defendant's favor on the ground that no genuine issue of fact exists regarding the issue of secondary meaning. See Flynn, supra; Yankee Candle, supra; Marie-Binucci v. Adam, 907 F. Supp. 29 (D. Mass. 1995).

The First Circuit places considerable weight on survey evidence to establish secondary meaning, and has deemed consumer surveys and testimony by individual consumers to be "[t]he only direct evidence probative of secondary meaning…" Yankee Candle, 259 F.3d at 43. When a plaintiff attempts to use circumstantial evidence to establish secondary meaning, the First Circuit has instructed courts to consider the following factors: (1) the length and manner of the term's use; (2) the nature and extent of advertising and promotion of the mark; and (3) the efforts made in the direction of promoting a conscious connection in the public's mind between the name or mark and particular product or venture. Boston Beer, 9 F.3d at 182; Flynn, 377 F.3d at 20. Merely alleging facts which address these factors is insufficient, however. It is still a plaintiff's ultimate burden to put forward evidence demonstrating a conscious connection by the public between the claimed mark and the plaintiff. Yankee Candle, 259 F.3d at 44.

In this case, Plaintiff has provided no direct evidence of secondary meaning. Instead she attempts to rely solely on circumstantial evidence to prove that the phrase "social savvy" -- and not the title of her book -- has achieved secondary meaning. Her proffer of evidence on secondary meaning consists of the following: (1) she has used the term "Social Savvy" for the past 18 years (Complaint ¶9); (2) she has conducted "thousands" of seminars in Boston, MA and

elsewhere using the "Social Savvy" name (Complaint ¶11); (3) since 1986 the Ritz Carlton in Boston has regularly hosted her "A Day of Social Savvy" seminar (Complaint ¶11); and (4) she has been identified numerous times in publications and on television, including being interviewed by numerous news media sources (Complaint ¶¶ 16, 17).

Even if all of these alleged facts are assumed to be true, Plaintiff has still failed to raise even the slightest indication that individual consumers associate the phrase "Social Savvy" exclusively with her in connection with books or otherwise. Based on these alleged facts, Plaintiff makes the entirely conclusory allegations that her "books and services have become world renown" (Complaint ¶9), and that "Social Savvy" has achieved "substantial consumer and trade recognition" particularly in the community of people who seek social etiquette services and advice" (Complaint ¶ 19). However, plaintiffs that merely allege that a term is "somehow inexorably linked to the plaintiffs and their product" without offering any "evidence to establish that consumers associate the term" with the plaintiffs or their products, fail to establish secondary meaning. Binucci, 907 F. Supp. at 32.

Plaintiff's book had very limited success. She earned a total of $35,000 from her book, none of it royalties, because the book sales did not exceed or "earn out" the advance. Ré Dep. at 63. Moreover, Plaintiff's etiquette business is insubstantial at best. She conducts her business out of her home, has no office or website, and has only one part-time employee. Ré Dep. at 19-20. Her business generated gross earnings of only $4,655.00 in 2003, $9,300 in 2002, and $9,200 in 2001. Kahn Aff., Ex. G. In addition, Plaintiff concedes that she has not spent any money on advertising to promote the mark "Social Savvy," and to generate business, has relied almost exclusively on word of mouth and minimal marketing of her seminars by hotels at which her seminars are given. Ré Dep. at 35. All of these factors militate against a finding of

13

secondary meaning. See U.S. Search, LLC v. U.S. Search.com Inc., 300 F.3d 517, 525-26 (4th Cir. 2002) (finding no secondary meaning where the record showed that the plaintiff had spent minimal amounts of money on advertising and had enjoyed limited sales success).

As a result, Plaintiff is forced to focus almost exclusively on the length and manner of the use of the phrase "Social Savvy" in an attempt to establish secondary meaning. It is simply not enough to provide statistics concerning use of the phrase at issue or to supply references to Plaintiff in the media, as Plaintiff has done here. See Yankee Candle, 259 F.3d at 44; King-Size, Inc. v. Frank's King Size Clothes, Inc., 547 F. Supp. 1138, 1158-59 (S.D. Tex. 1982) (finding no secondary meaning of the descriptive phrase "king-size" in connection with large men's apparel (1) despite Plaintiff's use of the term for thirty-five years, (2) despite the words "king-size" being the "most prominent feature" of plaintiff's corporate names, and (3) despite plaintiff's extensive national advertising in print, television, and radio media). "[I]t must be remembered that the question is not the extent of the promotional efforts, but their effectiveness in altering the meaning of [a descriptive term] to the consuming public." Aloe Crème Laboratories, Inc. v. Milsan, Inc. 423 F.2d 845, 850 (5th Cir. 1970) (rejecting plaintiff's assertion of secondary meaning despite plaintiff's proffer of independent "newspaper and magazine articles" highlighting plaintiff's products and evidence of expenditures of $3,000,000 in advertising in national media in an effort to "place the word 'Alo' on the lips of every prospective female customer in the American market place"); Seabrook Foods, Inc. v. Bar-Well Foods Ltd., 568 F.2d 1342, 1344 (C.C.P.A. 1977) (although evidence of sales volume "may have relevance in establishing secondary meaning, it is not necessarily indicative of recognition of the mark by purchasers as an indication of source of the goods.") (citation omitted).[5]

---

[5] See also In re Audio Book Club, Inc., 1999 WL 813965 at *6, 52 U.S.P.Q.2d 1042 (T.T.A.B. 1999) ("While applicant has made large expenditures in advertising and promoting its mail order services in the new