UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-11385- RGS

JUDITH RÉ

v.

JODI R. R. SMITH, and
BARNES & NOBLE INC.

MEMORANDUM AND ORDER ON DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT

May 11, 2005

STEARNS, D.J.

Judith Ré is the author of a book entitled Social Savvy: A Teenager's Guide to Feeling Confident in Any Situation (Teenager's Guide). She also teaches seminars on social etiquette. In connection with these seminars, Ré registered the service mark SOCIAL SAVVY®. Jodi Smith later authored two books on social etiquette entitled The Girl's Guide to Social Savvy and The Guy's Guide to Social Savvy (Girl's and Guy's Guides) at the request of Barnes & Noble, Inc. (B&N). Ré alleges that Smith and B&N misappropriated the "SOCIAL SAVVY®" mark. Defendants move for summary judgment, arguing that "social savvy" is a generic term ineligible for trademark protection.

BACKGROUND

The facts in the light most favorable to Ré are as follows. Ré is the owner of the Judith Ré Academie (JRA). The JRA conducts etiquette courses for children and teenagers. The JRA is based out of Ré's home. Ré has one part-time employee who assists in organizing the seminars. In 1991, Ré registered the mark "SOCIAL SAVVY®"

with the Patent and Trade Office (PTO) as the emblem for her "training programs and educational classes . . . teaching young people the social graces."[1]  Ré renewed the mark with the PTO in 2001.

Ré states that her best attended events are "A Day of SOCIAL SAVVY®" and "An Etiquette SOCIAL SAVVY® Dinner," seminars designed to build young people's social awareness and confidence.  Since 1986, the Ritz-Carlton Hotel in Boston has regularly hosted Ré's "A Day of SOCIAL SAVVY®" seminar.  Ré has also hosted SOCIAL SAVVY® seminars at the Four Seasons Hotels & Resorts in Seattle and San Francisco, the Century Plaza Hotel in Los Angeles, the Palace Hotel in New York, and the Ritz Carlton Hotels in New York, Cleveland and St. Louis.  In addition, Ré conducts business and wedding etiquette classes for adults, including the classes "SOCIAL SAVVY® For Business" and "SOCIAL SAVVY® Weddings."[2]  According to Ré, since 1986 she has conducted "thousands" of such classes and seminars across the United States.

Ré has been interviewed about social etiquette on CNN, the Today Show, Good Morning America, American Journal, the Joan Rivers Show, the Montel Williams Show, The View, the BBC TV and BBC Radio.  The Travel Channel's show "Best Kept Secrets" regularly features a videotape of one of Ré's seminars.  According to Ré, articles about her

---

[1] The registration does not mention Ré's book.  While single book titles are not registrable as marks, they may fall within the protections of § 43(a) of the Lanham Act, 15 U.S.C. § 43(a), if the title has acquired a secondary meaning.  See, e.g., EMI Catalogue P'ship v. Hill, Holliday, Connors, Cosmopulos, Inc., 228 F.3d 56, 63 (2d Cir.2000), amended by 2000 U.S. App. Lexis 30761 (2d Cir. 2000); Sugar Busters LLC v. Brennan, 177 F.3d 258, 269 (5th Cir.1999).

[2] Ré's seminars were not very lucrative.  They generated gross earnings of $4,655 in 2003, $9,300 in 2002 and $9,200 in 2001.  Ré's gross expenses were $3,070 in 2003, $3,301 in 2002 and $3,251 in 2001.

SOCIAL SAVVY® seminars have appeared in the New York Times, the Wall Street Journal, the Washington Post, the Los Angeles Times, the London Daily Mail, USA Today, Parade Magazine, Yankee Magazine, Forbes FYI Magazine, the Robb Report, Seventeen, Parenting, Working Mother, Child Magazine, the Christian Science Monitor, the Boston Herald, and the Boston Globe.

In 1991, Ré authored the Teenager's Guide.[3] Carole Lalli, a former editor at Simon & Schuster, who worked with Ré on the book, states that Simon & Schuster published it in part because of the national media attention Ré's SOCIAL SAVVY® seminars had received. The Teenager's Guide went through eleven printings over thirteen years. Sales, however, were never sufficient to generate royalties over and above the $35,000 advance paid by Simon & Schuster. The book is currently out of print, although copies can be purchased at Amazon.com or even sometimes at B&N bookstores.

In February 2003, a buyer for B&N approached Hallie Einhorn, an editor at B&N, with the idea of publishing etiquette guides for adult men and women. The only requirement was that the titles not contain the word "etiquette," which the buyer thought to be "too stuffy." After some research, Einhorn settled on the titles that she felt "were most appropriate for the young adult group targeted (20's and 30's) and the contemporary subject matter of the books" – The Girl's Guide fo Social Savvy and The Guy's Guide to Social Savvy.

Einhorn located Jodi Smith through an Internet search. In 1996, Smith had incorporated Mannersmith, an etiquette consulting firm. Her clients are businesses,

---

[3]The book clearly states on its verso page that SOCIAL SAVVY® is a registered service mark belonging to Judith Ré.

colleges and universities, and professional organizations. She provides etiquette training sessions and writes and speaks publicly about modern manners. She maintains and operates a website, www.Mannersmith.com offering etiquette advice. When Smith was hired to write the Girl's and Guy's Guides, the titles of the books had already been selected by Einhorn. In an email to Einhorn, Smith called her attention to Re's book with the omniscient observation that "the big words in the title are Social Savvy. I just want to make sure we aren't going to get an angry letter from their lawyers [by] using social savvy in our title." The Girl's and Guy's Guides were published in April of 2004.

Ré sent a "cease and desist" letter to the defendants on May 7, 2004, while Smith was in the midst of a media tour promoting the Girl's and Guy's Guides.[4] Ré filed suit on June 17, 2004. Defendants move for summary judgment on Re's claims of infringement on four grounds: (1) that the term "social savvy" is generic; (2) that "social savvy" has no secondary meaning with respect to Ré; (3) that Ré cannot show a likelihood of consumer confusion; and (4) that neither Smith nor B&N have used the term "social savvy" as a trademark.

## DISCUSSION

Summary judgment is proper when the pleadings and evidence on file show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The district court views the record "in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that

---

[4]The tour consisted of nineteen radio appearances, three book signings, and the mailing of sixty promotional letters to media outlets.

party's favor." Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990). The non-movant must direct the court's attention to evidence in the record sufficient to establish a genuine issue of material fact for trial. Celotex v. Catrett, 477 U.S. 317, 324 (1986). "On issues where the non-movant bears the ultimate burden of proof, [s]he must present definite, competent evidence to rebut the motion." Mesnick v. General Electric Co., 950 F.2d 816, 822 (1st Cir. 1991).

Resolving an allegation of trademark infringement is a two-step process. First, the plaintiff must establish that she has a protectable right in the mark. Boston Beer Co. Ltd. P'ship v. Slesar Bros. Brewing Co., Inc., 9 F.3d 175, 180 (1st Cir. 1993). If the plaintiff meets her burden, the court must then decide whether there is a likelihood of confusion between the mark and the challenged use. Id. A registered mark is presumed valid. See Equine Technologies v. Equitechnology, 68 F.3d 542, 544 (1st Cir. 1995). Moreover, Ré filed an affidavit with the PTO pursuant to § 15 of the Lanham Act, 15 U.S.C. § 1065, in February of 1997 establishing the "incontestability" of her mark.[5] Incontestable status provides "conclusive evidence of the registrant's exclusive right to use the registered mark." 15 U.S.C. §§ 33(b) and 1115(b).[6] However, like many legal constructs, the term "incontestability" is not as expansive as it would seem at first glance.

---

[5]A registrant seeking incontestability must satisfy the PTO that her mark has been registered and in continuous use in interstate commerce for five consecutive years, that there has been no final decision adverse to the claim of ownership of the mark or the right to keep the service mark registered, and that there is no proceeding pending in the PTO or the courts contesting the mark. 15 U.S.C. § 1065.

[6]The Lanham Act "generally applies the same principles concerning registration and protection to both trade and service marks." Park 'N Fly, Inc. v. Dollar Park ' Fly, Inc., 469 U.S. 189, 192 n.1 (1985).

> The provisions of the Lanham Act concerning registration and incontestability distinguish a mark that is "the common descriptive name of an article or substance" from a mark that is "merely descriptive." §§ 2(e), 14(c), 15 U.S.C. §§ 1052(e), 1064(c). Marks that constitute a common descriptive name are referred to as generic. A generic term is one that refers to the genus of which the particular product is a species. Abercrombie & Fitch Co. v. Hunting World, Inc., 537 F.2d 4, 9 (2d Cir. 1976). Generic terms are not registrable, and a registered mark may be canceled at any time on the grounds that it has become generic. See §§ 2, 14(c), 15 U.S.C. §§ 1052, 1064(c). A "merely descriptive" mark, in contrast, describes the qualities or characteristics of a good or service, and this type of mark may be registered only if the registrant shows that it has acquired secondary meaning, i.e., it "has become distinctive of the applicant's goods in commerce." §§ 2(e), (f), 15 U.S.C. §§ 1052(e), (f). . . . With respect to incontestable trade or service marks, § 33(b) of the Lanham Act states that "registration shall be conclusive evidence of the registrant's exclusive right to use the registered mark" subject to the conditions of § 15 and certain enumerated defenses. Section 15 incorporates by reference subsections (c) and (e) of § 14, 15 U.S.C. § 1064. An incontestable mark that becomes generic may be canceled at any time pursuant to § 14(c). That section also allows cancellation of an incontestable mark at any time if it has been abandoned, if it is being used to misrepresent the source of the goods or services in connection with which it is used, or if it was obtained fraudulently or contrary to the provisions of § 4, 15 U.S.C. § 1054, or §§ 2(a)-(c), 15 U.S.C. §§ 1052(a)-(c).

Park 'N Fly, Inc., 469 U.S. at 193-195. Thus, despite the formidable nomenclature, an "incontestable" mark is vulnerable to affirmative defenses, such as fraud, abandonment, functionality, and genericide. That is not to say that incontestability confers no advantages on a mark holder. Park 'N Fly permits a plaintiff to assert incontestability offensively to enjoin another from using her mark; it also immunizes her from an affirmative attack alleging that her mark is merely descriptive. Id. at 196-197.

Defendants' principal affirmative defense lies in the assertion that Ré's mark has become generic. Whether an "incontestable" mark is in generic use is usually an issue of fact determined by consideration of the "relevant public" who "purchases or may purchase the [trademarked] goods in the marketplace." Thomas & Batts Corp. v. Pandit

Corp., 138 F.3d 277, 301 (7th Cir. 1998). While defendants offer evidence suggesting that Ré's mark is generic, Ré counters with the affidavits of Carol Lebrun and Anita Cotter, hotel employees experienced in booking etiquette courses, who attest to the association of the phrase "social savvy" in the mind of the etiquette-consuming public with Ré and her SOCIAL SAVVY® seminars.

Defendants also argue as a matter of law that the registration did not extend to Ré's book because the registration claims to associate the mark only "with training programs and educational classes." A somewhat cursory comment in a Second Circuit case, Mushroom Makers, Inc. v. R. G. Barry Corp., 580 F.2d 44 (2d Cir. 1978), supports defendants' argument. " [E]ven if a mark is registered, the presumption of an exclusive right to use it extends only so far as the goods or services noted in the registration certificate (here shoes, slippers and sandals)." Id. at 48. Cf. Astra Pharmaceutical Prods., Inc. v. Beckman Instruments, Inc., 718 F.2d 1201, 1208 (1st Cir. 1983) ("Astra's registered mark does not allow it to pre-empt the whole broad field of health care products, especially as to other goods in that field that are totally dissimilar to its products.") However, three other Circuit Courts and a Massachusetts district court have disagreed. See Continental Motors Corp. v. Continental Aviation Corp. 375 F.2d 857, 861 (5th Cir. 1967) ("[T]he remedies of the owner of a registered trademark are not limited to the goods specified in the certificate, but extend to any goods on which the use of an infringing mark is '*likely* to cause confusion'"); E. Remy Martin & Co., S.A. v. Shaw-Ross International Imports, Inc., 756 F.2d 1525, 1530 (11th Cir. 1985) (the rights of the owner of a registered trademark are not limited to the specific goods listed in the certificate – for Remy Martin, cognac and

brandy – but include any goods likely to be related in the minds of consumers);[7] Sands, Taylor & Wood Co. v. The Quaker Oats Co., 978 F.2d 947, 958 (7th Cir. 1992) ("Modern trademark law prohibits use of a senior user's mark not only on products that are in direct competition with those of a senior user but also on products that are considered to be 'closely related' to the senior user's."); Perfection Fence Corp. v. Fiber Composites LLC, 2005 WL 353017 (D. Mass.) (O'Toole, J.) ("[B]ecause fencing and decking products are related, Perfection Fence's trademark remedies are not limited to the specific fencing goods listed in the registration for the Perfection Fence mark."). I am persuaded that these latter cases are better reasoned and more faithful than Mushroom Makers to the fulsome protections accorded to owners of a registered mark. 15 U.S.C. § 1052. Cf. Mark A. Lemley, The Modern Lanham Act and the Death of Common Sense, 108 Yale L.J. 1687, 1688 (1999) ("Courts protect trademark owners against uses that would not have been infringements even a few years ago and protect as trademarks things that would not have received such protection in the past."). Ré's book on etiquette could reasonably be found by a trier of fact to be a teaching material related in the minds of the relevant public to her SOCIAL SAVVY® seminars, while Smith's books in the minds of these same consumers might be thought to be associated with Ré.[8]

---

[7]The Ninth Circuit in dicta has cited E. Remy Martin & Co. with apparent approval. See Brookfield Communications, Inc. v. West Coast Entertainment Corp., 174 F.3d 1036, 1056 (9th Cir. 1999).

[8]The gravamen of Re's two state court claims (anti-dilution and unfair competition) is also the likelihood of consumer confusion. See L.L. Bean, Inc. v. Drake Publishers, Inc., 811 F.2d 26, 30 (1st Cir. 1987) (to obtain relief under the anti-dilution statute, a plaintiff must show that "his mark is distinctive and there is a likelihood of dilution due to (1) injury to the value of the mark caused by actual or potential confusion, (2) diminution in the uniqueness and individuality of the mark, or (3) injury resulting from use of the mark in a

ORDER

For the foregoing reasons, defendants' Motion for Summary Judgment is DENIED.

Trial is scheduled for Monday, August 15, 2005, at 9:00 a.m., in Courtroom 21.

SO ORDERED.

/s/ Richard G. Stearns

_____
UNITED STATES DISTRICT JUDGE

---

manner that tarnishes or appropriates the goodwill and reputation associated with plaintiff's mark."); Astra Pharmaceutical, 718 F.2d at 1209. See also Datacomm Interface, Inc. v. Computerworld, Inc., 396 Mass. 760, 769 (1986) (Massachusetts Unfair Competition statute covers confusion as to source, affiliations, connection, or sponsorship); R.J. Toomey Co. v. Toomey, 683 F. Supp. 873, 879 (D. Mass. 1988) (like a Lanham Act claim, an essential element of an action under Chapter 93A is that the "defendant's use of a mark caused confusion among customers as to the source of the plaintiff's product").